IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GEORGE M. PASION,

      Plaintiff,                    No.  2:10-cv-3227 GGH P

   vs.

JOHN A. HAVILAND, et al.,        ORDER

      Defendants.

_____/

I. Introduction

      Plaintiff is a state prisoner proceeding pro se and in forma pauperis.  He seeks relief pursuant to 42 U.S.C. § 1983.  This case is before the undersigned pursuant to both parties' consent.  Docs. 7, 22.  Presently pending is the sole defendant in this case, Cappel's, motion for summary judgment.  The sole claim remaining in this case is that defendant ordered plaintiff's retention in Administrative Segregation (Ad. Seg.) in retaliation for plaintiff's refusal to withdraw a complaint against other prison officials.

II. Motion for Summary Judgment

      Legal Standard for Summary Judgment

      Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

1

law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see

1  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.
2  Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the
3  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the
4  nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

5        In the endeavor to establish the existence of a factual dispute, the opposing party
6  need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
7  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
8  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary
9  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
10 genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.
11 56(e) advisory committee's note on 1963 amendments).

12       In resolving the summary judgment motion, the court examines the pleadings,
13 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
14 any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson,
15 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the
16 court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct.
17 at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's
18 obligation to produce a factual predicate from which the inference may be drawn. See Richards
19 v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902
20 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than
21 simply show that there is some metaphysical doubt as to the material facts . . . . Where the record
22 taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
23 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).
24 \\\\\
25 \\\\\
26 \\\\\

On September 14, 2011, and July 12, 2012,[1] the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

The above advice would, however, seem to be unnecessary as the Ninth Circuit has held that procedural requirements applied to ordinary litigants at summary judgment do not apply to prisoner pro se litigants. In Thomas v. Ponder, 611 F.3d 1144 (9th Cir. 2010), the district courts were cautioned to "construe liberally motion papers and pleadings filed by *pro se* inmates and ... avoid applying summary judgment rules strictly." Id. at 1150. No example or further definition of "liberal" construction or "too strict" application of rules was given in Ponder suggesting that any jurist would know inherently when to dispense with the wording of rules. Since the application of any rule which results in adverse consequences to the pro se inmate could always be construed in hindsight as not liberal enough a construction, or too strict an application, it appears that only the essentials of summary judgment, i.e., declarations or testimony under oath, and presentation of evidence not grossly at odds with rules of evidence, need be submitted by the pro se party.

Undisputed Facts

The following of defendant's undisputed facts (DUF) are either not disputed by plaintiff, or following the court's review of the evidence submitted, have been deemed undisputed:

During the relevant time, plaintiff was incarcerated at California State Prison Solano (CSP-Solano). DUF #1. Defendant Cappel was a Facility I Captain at CSP-Solano at the relevant time. DUF #2. On February 13, 2009, defendant was interviewed by Lt. McGuire

---

[1] Plaintiff was reminded of the requirements in light of Woods v. Carey, --- F.3d ----, 2012 WL 2626912 (9th Cir. July 6, 2012), and given an additional opportunity to file evidentiary submissions. Plaintiff filed additional submissions (Doc. 46) that the court has considered.

regarding a staff complaint plaintiff filed against officers Valdez and Freitas. DUF #4. Plaintiff alleged that Valdez and Freitas used excessive force and pepper spray on him. DUF #5. Lieutenant McGuire placed plaintiff in Ad. Seg. on February 13, 2009, pending the investigation of plaintiff's allegations. DUF #6, 7.

Part of defendant Cappel's responsibilities was to review Ad. Seg. placements and determine whether the inmate should be released or retained pending an Institutional Classification Committee (ICC) review. DUF #8. On February 17, 2009, defendant Cappel reviewed the paperwork regarding plaintiff's placement in Ad. Seg. and interviewed plaintiff regarding the allegations of staff misconduct. DUF #9.[2] During the interview plaintiff reiterated his allegations of staff misconduct. DUF #10. Defendant Cappel asked plaintiff in the course of the interview if he wished to withdraw the complaint. DUF #14. Defendant Cappel ultimately decided to retain plaintiff in Ad. Seg. pending ICC review of the allegations of staff misconduct. DUF #11.

On February 19, 2009, two days after defendant Cappel's retention order, plaintiff appeared before the ICC for an initial review of the Ad. Seg. placement. DUF #18. Defendant Cappel was a member of the committee, but not the chairperson. DUF #19. While the other committee members, along with the inmate, participate in making the decision, the chairperson has the final decision making authority. DUF #20; Plaintiff's Supplemental Declaration at 5. The committee decided to retain plaintiff in Ad. Seg. pending the completion of the investigation. DUF #24. Plaintiff was an active participant in the hearing. DUF #25. A memorandum summarizing the ICC hearing, that was written the same day as the hearing, indicates that plaintiff agreed with the decision to retain him in Ad. Seg. DUF #25; Declaration of Cappel, Exh. B. Plaintiff filed an inmate appeal on February 26, 2009, naming defendant

---

[2] Plaintiff also discusses the problems he confronted filing his staff complaint and how it was sent to the incorrect processing unit at the prison. However, is it undisputed all of these events occurred prior to the involvement of defendant Cappel.

5

Cappel, Lt. McGuire, and one other, stating that they retaliated against plaintiff and kept him in Ad. Seg. for filing his prior inmate appeal. DUF #26.

On March 5, 2009, plaintiff appeared before the ICC for a review of his Ad. Seg. placement. DUF #28. Defendant Cappel was a member of the committee, although not the chairperson. DUF #29. The committee reviewed the paperwork regarding the investigation that was now closed. DUF #30. It was noted that plaintiff had maintained his allegation of staff misconduct but was unable to provide any evidence to support this allegations. DUF #31. The committee concluded there was no basis for plaintiff's allegations of staff misconduct and therefore recommended that plaintiff leave Ad. Seg., and return to general population. DUF #32. Plaintiff was released on March 9, 2009. DUF #34.

Disputed Facts

Defendant Cappel states that asking plaintiff if he wished to withdraw his complaint is a procedural question because sometimes an inmate does withdraw his complaint. DUF #14. Defendant Cappel states he retained plaintiff in Ad. Seg., not because he refused to withdraw his complaint, but due to the nature of the allegations and releasing plaintiff back into general population would have jeopardized the integrity of the ongoing investigation against the prison officers. DUF #15. Defendant Cappel states the decision also was to protect plaintiff from staff as the allegation involved staff members. DUF #16. Defendant Cappel states he made this decision in light of California Code of Regulations, Title 15, § 3335(a). DUF #17.[3] Plaintiff states he was retained in Ad. Seg. in order to pressure him to withdraw his complaint. Opposition to Summary Judgment (Opposition) at 3.

---

[3] The regulation states: When an inmate's presence in an institution's general inmate population presents an immediate threat to the safety of the inmate or others, endangers institution security or jeopardizes the integrity of an investigation of an alleged serious misconduct or criminal activity, the inmate shall be immediately removed from general population and be placed in administrative segregation. Administrative segregation may be accomplished by confinement in a designated segregation unit or, in an emergency, to any single cell unit capable of providing secure segregation.

Defendant Cappel states that plaintiff was in agreement to be retained in Ad. Seg. during the February 19, 2009, ICC hearing. DUF #25. Plaintiff states in his opposition, "I did not agree to be retained but rather, I don't have any other choice but be retained." Opposition at 5. Plaintiff also believes that he was not released from Ad. Seg. due to the investigation concluding, rather he was released because he filed a complaint against Cappel and others. Opposition at 3.

Analysis

Legal Standard

The Ninth Circuit treats the right to file a prison grievance as a constitutionally protected First Amendment right. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009), citing Rhodes v. Robinson, 408 F.3d 559, 566 (9th Cir. 2005); Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). To state a viable claim for retaliation in violation of the First Amendment in the prison context, a plaintiff must show five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Brodheim, 584 F.3d at 1269 (quoting Rhodes, 408 F.3d at 567-68). Mere conclusions of hypothetical retaliation will not suffice, a prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." Frazier v. Dubois, 922 F.2d 560, 562 n.1 (10th Cir. 1990). Adverse action is action that "would chill a person of ordinary firmness" from engaging in the protected activity. Pinard v. Clatskunie School Dist. 6J, 467 F.3d 755, 770 (9th Cir. 2006). Plaintiff need not show that "'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" Brodheim at 1271. Plaintiff also bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains. Id.

\\\\\

This is not to say that a vexatious grievance filer can never be punished. Vexatious litigants may be the subject of court discipline, and the undersigned would find it incongruous that while the courts can punish vexatious filings, prison officials may not. Indeed, the right to petition for grievances is not absolutely protected; such a right has no greater protection than speech in general. Rendish v. City of Tacoma, 123 F.3d 1216 (9th Cir. 1997). In the prison context, one's free speech rights are more constricted from what they would be on the outside. O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S. Ct. 2400 (1987). Again, plaintiff must show that the actions or omissions constituting the "retaliation" served no legitimate penological goal.

Discussion

It is undisputed that plaintiff was already in Ad. Seg. prior to defendant's involvement in this case. It is also undisputed that defendant retained plaintiff in Ad. Seg. on February 17, 2009, for two days, until an ICC hearing on February 19, 2009, continued the Ad. Seg. placement. It is also undisputed than another ICC hearing on March 5, 2009, decided to release plaintiff, and he was actually released on March 9, 2009. It is undisputed that while defendant was on the ICC that retained plaintiff on February 19, 2009, defendant was not the chairperson, who has the final decision making authority.

What is in dispute is if defendant had a legitimate correctional goal in keeping plaintiff in Ad. Seg. for two days until the ICC hearing, or if defendant retained plaintiff in Ad. Seg. for refusing to withdraw his complaint against other prison officials. For the reasons that follow, defendant's motion for summary judgment should be granted.

It is undisputed that California Code of Regulations, Title 15, § 3335(a) provides for an inmate to be retained in Ad. Seg. during the pendency of an investigation and the court finds this regulation serves a legitimate penological interest. See Wright v. Director of Corrections, 2011 WL 6729677, *4 (S.D. Cal., December 21, 2011). However, this regulation cannot simply serve as a shield to justify retaliation by prison officials.

1    Plaintiff argues he would have been perfectly safe in general population and there
2 was no justification for Ad. Seg., other than to force him to withdraw his complaint. Plaintiff
3 notes that the underlying conduct of this claim occurred in July 2008, and he remained in general
4 population while his inmate grievance was processed. Plaintiff states he was perfectly safe for
5 the eight months in general population until placed in Ad. Seg. in February 2009. It appears the
6 grievance was improperly processed as there was confusion whether it was a staff misconduct
7 complaint or a complaint for improper medical care resulting from the pepper spray and improper
8 treatment. The court notes the bulk of plaintiff's federal complaint contained allegations of
9 excessive force, use of pepper spray and improper medical care against other dismissed
10 defendants.

11   While plaintiff may have been safe in general population prior to the correct
12 processing of the complaint, it is undisputed that defendant had no involvement in any of these
13 actions and only became involved in February 2009, after plaintiff was initially placed in Ad.
14 Seg., by a separate party. Also, the investigation into staff misconduct did not begin until
15 February 2009. There are no allegations that defendant was even aware when the underlying
16 incident occurred. Nor does plaintiff set forth any statements that he told defendant or even the
17 ICC that he had been safe in general population for the eight prior months.

18   Nor does the fact that defendant asked plaintiff if he wished to withdraw his
19 complaint, sufficient to demonstrate retaliation. Plaintiff states that defendant questioned
20 plaintiff aggressively regarding the underlying facts of excessive force, but with regard to
21 withdrawing his complaint, plaintiff only states that defendant asked if he wished to withdraw it.
22 Opposition at 3. Clearly, it was necessary for Cappel to understand whether the investigation
23 was to go forward or not, i.e., if there were to be no investigation, retention in Ad. Seg would
24 have been unnecessary. How else does Cappel find out what plaintiff desires, but to ask him?[4]

---

[4] Plaintiff's position is analogous to that of a defendant who claims: in failing to plead guilty pursuant to a plea agreement in which he might have straightaway served some "easier"

Plaintiff supports his argument by pointing out that defendant had the ability to release him from Ad. Seg., but because defendant chose not to, this proves retaliation. Plaintiff has failed to support his arguments with any evidence, simply his beliefs. <u>Leer v. Murphy</u>, 844 F.2d 628, 634 (9th Cir. 1988) (conclusory allegations insufficient to defeat summary judgment). Plaintiff reiterated his beliefs many times in the course of his deposition answers.

> Question: And you're saying that Cappel specifically asked you: Are you going - - what did he specifically ask you regarding withdrawing your complaint?
>
> Answer: Well, he asked me, you want to withdraw your complaint? I say no. See, if I withdraw my complaint, I **believe** he's going to release me in the hole, you know.

Deposition, Exhibit to Tomlins Declaration (Deposition) at 35 (emphasis added).

> Question: And you have no evidence or facts that [Cappel] conspired with Lieutenant Maguire, do you?
>
> Answer: Obviously, it's - - like I said, he got the authority to release me, but he didn't, so **obviously** they are conspiring.

Deposition at 47 (emphasis added).

That defendant had the ability to release plaintiff, and did not, does not prove retaliation. As noted above, plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains. <u>Brodheim</u>, 584 F.3d at 1271. While plaintiff's prior time in general population is noteworthy, plaintiff provides no other arguments that can overcome summary judgment. While California Code of Regulations, Title 15, § 3335(a) cannot serve as a complete defense under the guise of placing an inmate in Ad. Seg. for his own protection, the undisputed evidence in this case supports defendant's contention that plaintiff was placed in Ad. Seg., in the normal course of an investigation for his own safety, a legitimate correctional goal. The undisputed evidence demonstrates that plaintiff was promptly

---

time in federal prison, he was retained in county jail in detention status for several more months pending trial as "retaliation" for failure to accept the plea agreement. No– retention in the less favorable conditions of the county jail followed as a matter of course from the defendant's determination not to plead guilty.

released from Ad. Seg., back into general population twenty days later, once the investigation concluded. In that time there were two separate ICC hearings that apprised plaintiff of the situation and the status of the investigation. Declaration of Cappel, Exh. B, C. Plaintiff has failed to present sufficient evidence to demonstrate retaliation in defendant's decision to retain plaintiff in Ad. Seg. for two days until the ICC hearing.

Plaintiff also argues that he was retained in Ad. Seg. for filing a complaint and then refusing to withdraw it. Plaintiff then argues the only reason he was released from Ad. Seg. was not that the investigation ended as defendant argues, but because plaintiff filed another complaint naming defendant and others. Had plaintiff been again retained in Ad. Seg. after filing another complaint, that could perhaps show a pattern that does not support a legitimate correctional goal. That plaintiff was released a week after filing the next complaint, tends to discredit plaintiff's argument of being placed in Ad. Seg. for submitting complaints. In fact, it supports defendant's argument that plaintiff was placed in Ad. Seg. for his own protection and to insure the integrity of the investigation. Once the investigation was complete and despite more complaints from plaintiff, he was not placed back in Ad. Seg. Based on all this evidence, defendant has shown that plaintiff's retention in Ad. Seg. was not in retaliation for refusing to withdraw his complaint, rather it served a legitimate correctional goal during the short time period of the investigation.[5]

Accordingly, IT IS HEREBY ORDERED that defendant's motion for summary judgment (Doc. 36) be granted and this case closed.

DATED: August 22, 2012

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH: AB - pass3227.sj

---

[5] As the court has not found a constitutional violation, the qualified immunity argument will not be addressed.