1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   GEORGE M. PASION,                          No.  2:10-cv-3227 TLN AC P

12              Plaintiff,

13      v.                                       ORDER AND FINDINGS &
                                                 RECOMMENDATIONS
14   JOHN A. HAVILAND, et al.,

15              Defendants.

16

17       Plaintiff is a former state prisoner proceeding through counsel with a civil rights action

18   pursuant to 42 U.S.C. § 1983.  Currently before the court are defendant Cappel's motion for

19   summary judgment (ECF No. 83) and the parties' stipulated request for a case management

20   conference (ECF No. 107).

21       I.      Procedural History

22       On July 13, 2011, the previously assigned magistrate judge screened the second amended

23   complaint and dismissed all claims except for a retaliation claim against defendant Cappel.  ECF

24   No. 15 at 7.  After the close of discovery, defendant Cappel moved for summary judgment on the

25   merits (ECF No. 36) and the motion was granted (ECF No. 50).  Plaintiff proceeded to appeal.

26   ECF No. 52.

27       On appeal, the Ninth Circuit found that in light of Cappel's failure to provide any facts

28   that supported his non-retaliatory explanations for plaintiff's placement in administrative

                                            1

segregation, a reasonable jury could find that the reasons given were pretextual.  ECF No. 56 at 2-3.  The Ninth Circuit also found that there was an issue of fact as to whether Cappel was threatening plaintiff when he asked plaintiff if he was going to withdraw his grievance.  Id. at 3-4.  On these facts, the court determined that plaintiff had provided facts from which a reasonable jury could find that Cappel had placed plaintiff in administrative segregation in retaliation for filing a staff complaint.  Id. at 4.  The Ninth Circuit declined to address Cappel's argument that he is entitled to qualified immunity and remanded the issue so that the district court could consider it in the first instance.  Id.  The court also found that the screening of the second amended complaint had improperly dismissed plaintiff's retaliation claim against defendant McGuire.  Id. at 5.

On remand, defendant Cappel was given an opportunity to file a motion for summary judgment on qualified immunity and plaintiff was given an opportunity to amend the complaint as to the claims against defendant McGuire only.  ECF No. 76.  Plaintiff filed a third amended complaint (ECF No. 81) and defendant Cappel filed a motion for summary judgment which has been fully briefed (ECF No. 83).  Defendant McGuire has answered the complaint (ECF No. 103) and the parties have submitted a stipulated request for a status/scheduling conference (ECF No. 107).

II.       Plaintiff's Allegations

Plaintiff alleges that he was assaulted by another inmate and that when officers responded to the assault, they used pepper spray on plaintiff as well as his assailant.  ECF No. 81 at 3-4,[1] ¶¶ 13-14.  Plaintiff was then denied an opportunity to decontaminate until approximately forty-five minutes later.  Id. at 4, ¶ 16.  Five months later, plaintiff suffered from swelling in his face and irritation on his face and arms which ultimately led to him to be hospitalized for seven days.  Id. at 4-5, ¶¶ 17-20.  Plaintiff filed a grievance alleging staff misconduct against the officers that pepper sprayed him.  Id. at 5, ¶ 21.

////

_____

[1]  All page numbers refer to the numbers electronically stamped on the documents by the court upon filing.

2

On February 13, 2009, defendant McGuire interviewed plaintiff about his appeal of his grievance and after the interview McGuire placed plaintiff in administrative segregation.  Id., ¶¶ 22-23.  The report submitted by McGuire stated that plaintiff was "placed in Administrative Segregation for the accusation of staff misconduct."  Id., ¶ 23.  Plaintiff alleges that defendant McGuire placed him in administrative segregation in retaliation for filing a grievance against the officers that pepper sprayed him.  Id. at 6, 8, ¶¶ 24, 33.

Plaintiff was subsequently interviewed by defendant Cappel to determine whether he was a threat to the safety of others while an investigation of his allegations was being conducted.  Id. at 6-7, ¶ 27.  Cappel had the authority to release plaintiff back into the general population.  Id. Plaintiff claims that during the interview, Cappel asked him to withdraw his complaint and ordered plaintiff retained in administrative segregation when he would not.  Id.  At the hearing to determine whether plaintiff should be released into the general population, Cappel recommended not releasing plaintiff.  Id.  Plaintiff alleges that Cappel's actions were in retaliation for refusing to withdraw the grievance against the officers that pepper sprayed him.  Id. at 7-8, ¶¶ 28, 33.

III.     Motion for Summary Judgment

A.     Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  "Where the non-moving party bears the burden of proof at trial,

1  the moving party need only prove that there is an absence of evidence to support the non-moving

2  party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R.

3  Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for

4  discovery and upon motion, against a party who fails to make a showing sufficient to establish the

5  existence of an element essential to that party's case, and on which that party will bear the burden

6  of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an

7  essential element of the nonmoving party's case necessarily renders all other facts immaterial."

8  Id. at 323. Summary judgment should be granted, "so long as whatever is before the district court

9  demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

10  　　　If the moving party meets its initial responsibility, the burden then shifts to the opposing

11  party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

12  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the

13  existence of this factual dispute, the opposing party may not rely upon the allegations or denials

14  of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

15  admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P.

16  56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in

17  contention is material, i.e., a fact "that might affect the outcome of the suit under the governing

18  law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific

19  Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e.,

20  "the evidence is such that a reasonable jury could return a verdict for the nonmoving party,"

21  Anderson, 447 U.S. at 248.

22  　　　In the endeavor to establish the existence of a factual dispute, the opposing party need not

23  establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed

24  factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

25  truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co.,

26  391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings

27  and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475

28  U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

    B.    Qualified Immunity Standard

Government officials are immune from civil damages "unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  In analyzing a qualified immunity defense, the court must consider the following: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident.  Saucier v. Katz, 533 U.S. 194, 201 (2001) overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009) (overruling Saucier's requirement that the two prongs be decided sequentially).  These questions may be addressed in the order most appropriate to "the circumstances in the particular case at hand." Pearson, 555 U.S. at 236.  Thus, if a court decides that plaintiff's allegations do not support a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.  On the other hand, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court need not determine whether plaintiff's allegations support a statutory or constitutional violation.  Pearson, 555 U.S. at 236, 242.

////

5

C.      Arguments of the Parties

Both parties rely on the evidence and statements of facts that they submitted during briefing of the original motion for summary judgment (ECF No. 36).  ECF No. 83 at 7; ECF No. 101 at 12:7-14.

1.  Defendant Cappel

Defendant Cappel argues that he is entitled to qualified immunity because it was not clearly established that keeping an inmate in administrative segregation pursuant to 15 C.C.R. § 3335 violated that inmate's constitutional rights.  ECF No. 83 at 9-11.  He further argues that allegations of improper motive have no impact on a qualified immunity defense, and that other courts have granted qualified immunity to prison officials acting under § 3335.  Id. at 10-13.

2.  Plaintiff

Plaintiff argues that the law regarding retaliation was clearly established, and that evidence of improper motive is relevant to a qualified immunity defense when intent is an essential element of the cause of action.  ECF No. 87 at 10-15.

D.      Discussion

1.  Violation of a Constitutional Right

The Ninth Circuit has already held that, taken in in the light most favorable to plaintiff, the allegations in the complaint demonstrate that defendant Cappel kept plaintiff in administrative segregation in retaliation for plaintiff filing a grievance, which violates plaintiff's rights under the First Amendment.  ECF No. 56.  This prong of the qualified immunity analysis is therefore resolved in plaintiff's favor.

2.  Clearly Established Right

Defendant argues that the question with respect to whether plaintiff had a clearly established right is as follows: "[I]n 2009, would a reasonable prison official in Captain Cappel's position have known that his actions in retaining Pasion in administrative segregation under a mandatory state regulation violated Pasion's federal rights?"  ECF No. 83 at 10.  As plaintiff points out, that it is the wrong question.  ECF No. 87 at 12.  The proper question is whether it was clearly established in 2009 that correctional officers could not retain an inmate in administrative

1    segregation in retaliation for filing a grievance.[2]  The answer to that question is yes.

2        "[T]he prohibition against retaliatory punishment is 'clearly established law' in the Ninth

3    Circuit, for qualified immunity purposes."  Pratt v. Rowland, 65 F.3d 802, 806 (citing Schroeder

4    v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995) (at the time of defendants' conduct, "the law

5    clearly established that defendants cannot transfer a prisoner from one correctional institution to

6    another in order to punish the prisoner for exercising his First Amendment right to pursue civil

7    rights litigation in the courts" (citation omitted))).  Prior to the events at issue in this case, a

8    number of Ninth Circuit cases had found a variety of actions by corrections officers, including

9    placing an inmate in administrative segregation, could violate the First Amendment if they were

10   taken in retaliation for filing a grievance.  Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004)

11   (placement in administrative segregation in retaliation for filing grievances); Rhodes v. Robinson,

12   408 F.3d 559, 568 (9th Cir. 2004) (arbitrary confiscation and destruction of property, initiation of

13   a prison transfer, and assault in retaliation for filing grievances); Bruce v. Ylst, 351 F.3d 1283,

14   1288-89 (9th Cir. 2003) (validation as a gang member in retaliation for filing grievances); Hines

15   v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997) (issuance of false rules violation and subsequent

16   finding of guilt in retaliation for filing grievances); Valandingham v. Bojorquez, 866 F.2d 1135,

17   1138 (9th Cir. 1989) (inmate labeled as a snitch in retaliation for filing grievances).

18       Defendant's formulation of the "clearly established right" issue is also misleading because

19   it implies that 15 C.C.R. § 3335 mandated retaining plaintiff in administrative segregation during

20   an investigation into a staff complaint, and deprived defendant of all discretion regarding

21   segregation.  However, defendant states that his responsibility was "to review administrative

22   segregation placements, and determine whether the inmate should be released or retained pending

23   review by the Institutional Classification Committee."  ECF No. 83 at 7.  This statement

24   indicates, and plaintiff argues (ECF No. 87 at 12-13; ECF No. 101 at 10:14-21), that the decision

25   _____

26   [2]  Defendant's argument that the question of "whether retaliatory punishment was prohibited"
     poses too broad a question (ECF No. 88 at 2-3) is meritless.  While that question would
27   potentially be too general to conduct an effective qualified immunity analysis, the more focused
     question presented here is not.

28

1    to retain plaintiff in administrative segregation was not mandatory simply because there was an

2    ongoing investigation.  A review of the relevant portion of the regulation shows that § 3335

3    mandates retention in administrative segregation only when certain criteria are met:

> When an inmate's presence in an institution's general inmate
> population presents an **immediate threat to the safety of the
> inmate or others, endangers institution security or jeopardizes
> the integrity of an investigation of an alleged serious
> misconduct or criminal activity**, the inmate shall be immediately
> removed from general population and be placed in administrative
> segregation.

Cal. Code Regs. tit. 15, § 3335(a) (2008) (emphasis added).  Based on the plain language of the

statute, the mere fact of an investigation would not be sufficient to warrant placement in

administrative segregation.  Rather, segregation was required only if plaintiff's placement in the

general population posed a threat to institutional safety or security or jeopardized the integrity of

the investigation.

According to Cappel, he retained plaintiff in administrative segregation "to protect the

safety and security of PASION, the involved staff members and the institution" and "to protect

the inmate from exposure to the employee against whom he made the allegations, to help

eliminate witness tampering, to help control with whom the inmate has contact during the

investigation, including the employee against whom he made the allegations, and to help create a

clean record of the investigation and hold everyone involved accountable."  ECF No. 83-1 at 16,

¶ 7.  If these concerns did in fact motivate Cappel, he would be entitled to judgment in his favor.

Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84, 287 (1977) (retaliation

is actionable even if the act, taken for a different reason, would have been proper, but defendant

may prevail if he shows he would have reached the same decision absent the protected conduct).

It is indisputable that "[m]aintaining the integrity of an investigation into serious

institutional misconduct is a legitimate penological interest."  Bryant v. Cortez, 536 F. Supp. 2d

1160, 1169 (C.D. Cal. 2008); see also Draper v. Harris, 245 F. App'x 699, 701 (9th Cir. 2007).

However, the Ninth Circuit explicitly found in this case that there were no facts on the record to

support the contentions that (1) plaintiff posed a threat to the safety and security of the institution,

8

1   staff, or other inmates or (2) that plaintiff's return to the general population would jeopardize the

2   integrity of the investigation.  ECF No. 56 at 2-3.  Accordingly, the Ninth Circuit found a triable

3   issue of fact as to whether plaintiff's retention in administrative segregation advanced a legitimate

4   penological goal.  Id.  On remand, defendant has offered no additional facts into the record that

5   would support the justifications put forth for plaintiff's retention in administrative segregation.  In

6   light of the Ninth Circuit's ruling, and absent any additional evidence to support the stated

7   reasons for retaining plaintiff in administrative segregation, this court cannot conclude that the

8   undisputed facts establish that § 3335 mandated plaintiff's retention in administrative segregation,

9   rendering irrelevant any retaliatory motive Cappel may have also harbored.

10          In support of his argument that the law was not clearly established, defendant also cites to

11  two district court cases for the proposition that "courts have determined that [§ 3335] is

12  mandatory."  ECF No. 88 at 3 (citing Morris v. Hickison, No. 06-cv-2936-LKK, 2010 WL

13  3034194, at *15, 2010 U.S. Dist. LEXIS 77152, at *42-43 (E.D. Cal. July 30, 2010); Anderson v.

14  Deleon, No. C 12-6055 SI (pr), 2014 WL 3595020, at *9, 2014 U.S. Dist. LEXIS 98920, at *30

15  (N.D. Cal. July 21, 2014).  Neither of the cases cited by defendant involved a disputed issue of

16  fact as to whether the reasons given for the plaintiffs' placement in administrative segregation

17  was pretextual.  Accordingly, the undersigned does not find them persuasive.

18                         3.  Motive is Relevant to the Qualified Immunity Analysis

19          Defendant argues that whether he had an improper motive in retaining plaintiff in

20  administrative segregation is immaterial to a qualified immunity analysis.  ECF No. 83 at 10-11.

21  He relies on Crawford-El v. Britton, 523 U.S. 574, 588 (1998), and Harlow v. Fitzgerald, 457

22  U.S. 800, 817-18 (1982), for this proposition, arguing that they state that "subjective intent" and

23  "bare allegations of malice" do not impact qualified immunity.  ECF No. 83 at 11.  However, as

24  plaintiff correctly points out, defendant has misapprehended the law.  ECF No. 87 at 14-15.

25  "Although a defendant's subjective intent is usually not relevant to the qualified immunity

26  defense, his mental state is relevant when, as here, it is an element of the alleged constitutional

27  violation."  Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002) (emphasis in original)

28  (analyzing Eighth Amendment claims) (citing Jeffers, 267 F.3d at 911).

As explained in Crawford-El, Harlow reformulated the standard for qualified immunity. Crawford-El, 523 U.S. at 586-94.  Prior to Harlow, "the mere allegation of intent to cause any 'other injury,' not just a deprivation of constitutional rights, would have permitted an open-ended inquiry into subjective motivation."  Crawford-El, 523 U.S. at 592 (citing Wood v. Strickland, 420 U.S. 308, 322 (1975).  The Crawford-El court explained that "[w]hen intent is an element of a constitutional violation, however, the primary focus is not on any possible animus directed at the plaintiff; rather, it is more specific, such as an intent . . . to deter public comment on a specific issue of public importance."  Id. (internal citation omitted).  Using facts from the case, the Crawford-El court gave the following example of the distinction between the "subjective intent" and "bare allegations of malice" that are irrelevant to a qualified immunity analysis and the retaliatory intent that is a necessary component of a First Amendment claim: "[P]roof that respondent diverted the plaintiff's boxes because she hated him would not necessarily demonstrate that she was responding to his public comments about prison conditions, although under Wood such evidence might have rebutted the qualified immunity defense."  Id.  Contrary to defendant's assertion, Harlow and Crawford-El do not stand for the proposition that all subjective intent is irrelevant.  They establish that evidence of a defendant's general hatred of a plaintiff is not relevant to a qualified immunity defense, but specific intent that constitutes an element of a constitutional violation is relevant.  Retaliatory intent is precisely such an element.

E.      Conclusion

As set forth above, defendant Cappel cannot establish that he is entitled to qualified immunity under either prong of the test and his motion for summary judgment should therefore be denied.

IV.      Request for Status/Scheduling Conference

The parties' stipulated request for a status conference will be granted in part.  The court will set a status conference.  However, due to the pending recommendation that defendant Cappel's motion for summary judgment be denied and to facilitate judicial economy, the status conference will not be set until the district judge rules on the findings and recommendations.

////

1   IT IS HEREBY ORDERED that:

2       The parties' stipulated request for a status conference (ECF No. 107) is granted in part.

3   The court will schedule a status conference upon resolution of the pending findings and

4   recommendations on defendant Cappel's motion for summary judgment.

5       IT IS FURTHER RECOMMENDED that defendant Cappel's motion for summary

6   judgment (ECF No. 83) be denied.

7       These findings and recommendations are submitted to the United States District Judge

8   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

9   after being served with these findings and recommendations, any party may file written

10  objections with the court and serve a copy on all parties.  Such a document should be captioned

11  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

12  objections shall be served and filed within fourteen days after service of the objections.  The

13  parties are advised that failure to file objections within the specified time may waive the right to

14  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

15  DATED: January 6, 2016

16

17  ALLISON CLAIRE
    UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28

11